**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-02343-REB-NYW

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin Corporation,

    Plaintiff,

v.

TAMKO BUILDING PRODUCTS, INC.,a Missouri Corporation,

    Defendant.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

**Blackburn, J.**

The matters before me are (1) **Defendant TAMKO Building Products, Inc.'s Motion To Dismiss or Compel Arbitration** [#14],[1] filed October 29, 2015; and (2) **Defendant TAMKO Building Products, Inc.'s Motion for Stay Pending Ruling on Its Motion To Dismiss or Compel Arbitration** [#29], filed January 27, 2016.[2] I grant the motion to compel arbitration and dismiss this action, mooting consideration of defendant's motion to stay.

### I. JURISDICTION

I have putative jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

---

[1] "[#14]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2] With the consent of the magistrate judge, the previous **Order of Reference** [#30], filed January 27, 2016, is withdrawn so that this court may dispose of the motion directly.

## II.  STANDARD OF REVIEW

The decision whether to enforce an arbitration agreement involves a two-step inquiry.  First, I must determine whether the parties agreed to arbitrate the dispute.  ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); ***Williams v. Imhoff***, 203 F.3d 758, 764 (10th Cir. 2000).  Second, I then must consider whether any statute or policy renders the claims non-arbitrable.  ***Mitsubishi Motors Corp.***, 105 S.Ct. at 3355; ***Williams***, 203 F.3d at 764.

## III.  ANALYSIS

This case arises out of the installation of the roofs of two Aurora, Colorado, condominium complexes, referred to herein collectively as "the insureds."  After the roofs were damaged by hail in May 2014, the insureds elected to replace them with "impact resistant" shingles manufactured by defendant.  The insureds hired a general contractor to do the work, who, in turn, subcontracted the work to Schall Construction, Inc. ("Schall"), which installed the shingles.

In September 2014, while the installation was still in progress, a second hail storm caused further damage to the roofs, both those portions that had been replaced with defendant's shingles and those that as yet had not.  Thereafter, defendant's shingles were used to replace both the old roof and the new shingles damaged by the second storm.

At some point soon thereafter, the insureds became aware that defendant's shingles did not conform to their advertised "Class 4" impact rating.  If they had,

according to plaintiff, the damage from the September 2014 hail storm to the new shingles "should have been limited to shingles with unique support conditions such as those draped over ridges, hips and valleys." (**Compl.** ¶ 8(b).) The insureds made a claim against their insurance policy for the costs of removing and replacing the shingles. Plaintiff, their insurer, paid those claims. It now brings this lawsuit as subrogee of the insureds and asserts claims sounding in negligence, strict liability, breach of express and implied warranties, and misrepresentation.

By this motion, defendant moves to compel arbitration of all plaintiffs' claims pursuant to an arbitration clause included in a Limited Warranty which was printed on the wrapper of each bundle of shingles. Printed on the wrapper is a prominent, horizontal text box which reads "IMPORTANT, READ CAREFULLY BEFORE OPENING BUNDLE." Beneath this text is printed, relevantly, the following:

> In this paragraph, "You" and "Your" refer to the installer of the shingles and the owner of the building on which these shingles will be installed. This is a legally binding agreement [between] You and TAMKO Building Products, Inc. ("TAMKO"). By opening this Bundle, You agree: (a) to the terms and conditions of the limited warranty in effect for these shingles, including the agreement to arbitrate any and all disputes between you and TAMKO; . . . .

(**Def. Motion App.**, Exh. A-1.) The paragraph concludes by advising, "[i]f you are not satisfied with the terms and conditions of this Limited Warranty, return all unopened marketable product to the original place of purchase for a refund." (**Id.**)

The Limited Warranty itself is printed in five columns to the left of this text box. It includes the following clause:

3

>**MANDATORY BINDING ARBITRATION**: EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER (EACH AN "ACTION") BETWEEN YOU AND TAMKO (INCLUDING ANY OF TAMKO'S EMPLOYEES AND AGENTS) RELATING TO OR ARISING OUT OF THE PRODUCT SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY. TO ARBITRATE AN ACTION AGAINST TAMKO, YOU MUST INITIATE THE ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF ARBITRATION OF THE JUDICIAL ARBITRATION AND MEDIATION SERVICE OR OTHER ARBITRATION SERVICE AGREED TO IN WRITING BY TAMKO, AND PROVIDE WRITTEN NOTICE TO TAMKO BY CERTIFIED MAIL AT P.O. BOX 1404, JOPLIN, MISSOURI 64802 WITHIN ONE YEAR FOLLOWING THE DISCOVERY OF THE LEAK.
>
>**ANY ACTION BROUGHT BY YOU AGAINST TAMKO WILL BE ARBITRATED** . . .
>
>LEGAL REMEDIES: REMEDIES FOR BREACH OF THIS LIMITED WARRANTY OR ANY IMPLIED WARRANTY ARE EXCLUSIVE AND REPRESENT THE SOLE REMEDIES AVAILABLE TO THE OWNER OR ANY OTHER PERSON OR ENTITY, INCLUDING ANY MORTGAGEE, INSURER, OR OTHER PARTY IN INTEREST. OBLIGATIONS CONTAINED IN THIS LIMITED WARRANTY ARE EXPRESSLY IN LIEU OF ANY OTHER OBLIGATIONS, GUARANTEES, WARRANTIES, AND CONDITIONS EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OR CONDITION OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ANY OTHER OBLIGATIONS OR LIABILITY ON THE PART OF TAMKO BUILDING PRODUCTS, INC.

(*Id.* (typeface and emphases original).)  Defendant maintains that this provision is valid and enforceable and thus requires all claims in this lawsuit be dismissed and referred to arbitration.  I concur, and thus grant the motion.

In considering an arbitration clause, the court first must address the question of arbitrability *vel non*. An arbitration agreement is enforceable if (1) there is a valid agreement to arbitrate; and (2) the dispute falls within the scope of that agreement. **See National American Insurance Co. v. SCOR Reinsurance Co.**, 362 F.3d 1288, 1290 (10th Cir. 2004); **Via Fone, Inc. v. Western Wireless Corp.**, 106 F.Supp.2d 1147, 1150 (D. Kan. 2000). Plaintiff challenges the arbitration provision on both these bases.

Whether the parties agreed to arbitrate "is a threshold matter," **Avedon Engineering, Inc. v. Seatex**, 126 F.3d 1279, 1287 (10th Cir. 1997), which is governed by state law, **First Options of Chicago, Inc. v. Kaplan**, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); **Hardin v. First Cash Financial Services, Inc.**, 465 F.3d 470, 475 (10th Cir. 2006). Under Colorado law, a valid contract requires proof, *inter alia*, of a meeting of the minds as to all essential terms. **Agritrack, Inc. v. DeJohn Housemoving, Inc.**, 25 P.3d 1187, 1192 (Colo. 2001), **as modified on denial of reh'g** (Colo. July 2, 2001); **I.M.A., Inc. v. Rocky Mountain Ariways, Inc.**, 713 P.2d 882, 888 (Colo. 1986). Plaintiff argues that an essential element is lacking here because its insureds never saw any of the bundles of shingles to which the arbitration provision was affixed.

Neither party contests that it was the subcontractor, Schall, not plaintiff's insureds themselves, who opened the bundles. Nevertheless, it was the insureds who decided to purchase defendant's shingles (**Compl.** ¶ 5), and hired the general contractor to complete the work on their behalf (**Plf. Resp. App.**, Exh 1 ¶ 6; Exh 2 ¶ 6). The general contractor thus became the insureds' special agent for purposes of completing the

5

roofing project.  *See **Mullin v. Hyatt Residential Group, Inc***., 82 F.Supp.3d 1248, 1258 (D. Colo. 2015) (defining agency), *as amended* (Mar. 10, 2015).  *See also **Stortroen v. Beneficial Financial Co. of Colorado***, 736 P.2d 391, 395 (Colo. 1987) (differentiating general from special agency).  By delegating its duty to install the shingles to Schall, the general contractor created a subagency.  *See id.* at 395-96 ("A subagent is a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible.").[3]  Schall thus became an agent of both the general contractor and the insureds.  *See **Mullin***, 82 F.Supp.3d at 1258.

Because the insureds were principals of Schall, whether the insureds themselves actually consented to the arbitration clause is irrelevant.  The wrapper affixed to each bundle of shingles specifically and conspicuously provided that opening the package would constitute acceptance of the terms of the Limited Warranty, including the arbitration clause, printed on the wrapper.  By opening the bundles, Schall created a contract implied in fact.[4]  *See **Agritrack, Inc.***, 25 P.3d at 1192 ("A contract implied in

---

[3]  Although plaintiff takes pains to suggest that Schall was an independent contractor, the mere affixing of the label is of no moment.  "An agency relationship need not be contractual, and may exist even though the parties do not call it an agency and do not subjectively intend that legal consequences flow from their relation."  ***Mullin***., 82 F.Supp.3d at 1258 (citation and internal quotation marks omitted)).  "What is critical is that the parties materially agree to enter into a particular relation to which the law attaches the legal consequences of agency, even though those consequences might not have been within the contemplation of the parties at the time of their agreement."  ***Stortroen***, 736 P.2d at 395.

[4]  That the arbitration provision was imposed after the shingles had already been purchased is not determinative.  This method of providing arbitration terms is similar to the "shrinkwrap licenses" that accompany purchases of computer software, which have been found enforceable.  *See **Hoekman v. TAMKO Building Products, Inc.***, 2015 WL 9591471 at *5 & n.5 (E.D. Cal. Aug. 26, 2015) (citing cases).  *See also **ProCD, Inc. v. Zeidenberg***, 86 F.3d 1447, 1451-52 (7th Cir. 1996) (noting that "[t]ransactions in which the exchange of money precedes the communication of detailed terms are common," citing as examples insurance contracts, airline and concert tickets, boxed consumer electronic goods, and computer software).

fact arises from the parties' conduct which evidences a mutual intention to enter into a contract."). Not only is Schall's actual or constructive notice of the terms of the agreement imputable to the insureds as principals, *see Mullin*, 82 F.Supp.3d at 1258, but its acceptance of the terms of the offer by its conduct binds the insureds as principals to the contract, *see Beneficial Financial Co. of Colorado v. Bach*, 665 P.2d 1034, 1036 (Colo. App. 1983). Because the insureds thus would be bound to arbitrate, plaintiff, as their subrogee, *see American Family Mutual Insurance Co. v. DeWitt*, 218 P.3d 318, 323 (Colo. 2009), likewise is so bound.[5]  *See Stolt Tankers BV v. Allianz Seguros, S.A.*, 2011 WL 2436662 at *2 (S.D.N.Y. June 16, 2011) ("[T]here is no valid basis in law or equity why an arbitration clause should not be enforced against a subrogee.") (citation, internal quotation marks, and footnote omitted).[6]

Contrary to plaintiff's argument, there is nothing unconscionable in this result. Arbitration agreements are subject to the same defenses that apply to contracts generally, including unconscionability. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). *See also* 9 U.S.C. § 2. Under Colorado law, several considerations inform the court's analysis of this issue, including whether there is evidence of

---

[5] This court is not the first to consider the enforceability *vel non* of this specific arbitration clause, and I acknowledge that one state appellate court concluded that the plaintiffs' claims were not arbitrable because the plaintiffs had not personally seen the Limited Warranty. *See Hobbs v. TAMKO Building Products, Inc.*, 479 S.W.2d 147, 149 (Mo. App. 2015). This decision appears to be based on the particular requirements of Missouri law, which of course has no bearing on the case here. To the extent it is not, I find the analysis of the decision superficial and thus simply unpersuasive.

My determination instead tracks those of the federal district courts which have found this specific arbitration clause valid and enforceable, which decisions I find persuasive. *See Hoekman*, 2015 WL 9591471; *Overlook Terraces, Ltd. v. TAMKO Building Products, Inc.*, 2015 WL 9906298 (W.D. Ky. May 21, 2015); *Krusch v. TAMKO Building Products, Inc.*, 34 F.Supp.3d 584 (M.D.N.C. 2014).

[6] Because the contract is valid and enforceable against plaintiff, I need not consider defendant's alternative argument that plaintiff is estopped from avoiding arbitration because its claims necessarily rely on the terms of the Limited Warranty.

>   (1) a standardized agreement executed by parties of unequal bargaining power; (2) lack of opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; (4) absence of evidence that the provision was commercially reasonable; (5) the terms of the contract; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) all the circumstances surrounding the formation of the contract.

***Vernon v. Qwest Commcations International, Inc***., 925 F.Supp.2d 1185, 1194 (D. Colo. 2013) (quoting ***Davis v. M.L.G. Corp***., 712 P.2d 985, 991 (Colo.1986)).

Plaintiff's argument in this regard is rather superficial and underdeveloped, which in itself would absolve the court of the obligation to address it substantively.  ***See Center for Biological Diversity v. Pizarchik***, 858 F.Supp.2d 1221, 1230 n.11 (D. Colo. 2012) (court does not consider "cursory, unsupported, or otherwise inadequately briefed arguments") (citation and internal quotation marks omitted).  Moreover, by addressing only the second, third, and sixth factors cited above, plaintiff's arguments are premised entirely on issues of procedural unconscionability.  ***See Cook v. PenSa, Inc***., 2014 WL 3809409 at *11 (D. Colo. Aug. 1, 2014).  Because plaintiff cannot prevail unless it demonstrates both procedural *and* substantive unconscionability, ***Vernon***, 925 F.Supp.2d at 1194-95, its argument is essentially a non-starter.

Nevertheless, even when considered substantively, plaintiff's suggestion of unconscionability does not bear scrutiny.  The second factor does not suggest that the arbitration agreement is unconscionable because, as already discussed, the insureds' lack of opportunity to read the Limited Warranty is irrelevant where their subagent accepted the terms thereof by his actions within the scope of his agency on their behalf. ***See Hoekman v. TAMKO Building Products, Inc***., 2015 WL 9591471 at *6 (E.D. Cal.

Aug. 26, 2015). For the same reason, the fact that the insureds were "two steps removed" from Schall does not convince the court that there was undue surprise. **See id.** Such a claim might have more traction had Schall unilaterally chosen the shingles without input from the insureds, but the complaint specifically alleges that the insureds themselves chose to purchase defendant's shingles particularly.[7] Accordingly, the sixth factor does not suggest unconscionability, either.

Finally, regarding the third factor, although the Limited Warranty is indeed printed in small type, the printing is of the same size as the majority of the other printing on the packaging. **See Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.**, 2007 WL 4268962 at *7 (D. Colo. Nov. 30, 2007) (provision "in normal print consistent with other clauses in the contract" not inconspicuous). In addition, and unlike much of the other printing on the wrapper, the arbitration clause itself is printed entirely in capital letters, employs bold-face type for emphasis, and is specifically pointed out by the prominent text box just to its right, which itself both warns the user of the consequences of opening the package and specifically references the arbitration provision. I cannot find the agreement unconscionable given these circumstances.

Accordingly, the arbitration agreement is valid and enforceable. The only remaining question, therefore, is whether the claims raised in this lawsuit are within the scope of that agreement. **National American Insurance Co.**, 362 F.3d at 1290. Although plaintiff argues that its claims do not come within the scope of the arbitration agreement, I find and conclude that issue must be resolved by the arbitrator.

---

[7] This case thus falls somewhere between **Hoekman**, in which the plaintiffs personally shopped for and purchased the shingles, and the facts of **Overlook Terraces** and **Krusch**, in which there was no suggestion that the plaintiffs themselves chose defendant's shingles. **See Hoekman**, 2015 WL 9591471 at *6-7.

The agreement provides that arbitration will be conducted according to the rules of the Judicial Arbitration and Mediation Service ("JAMS").  Rule 11(b) of the JAMS Comprehensive Arbitration Rules and Procedures provides that "[j]urisdictional and arbitrability disputes, *including disputes over the . . . scope of the agreement under which Arbitration is sought* . . . shall be submitted to and ruled on by the Arbitrator." Rule 11(b), **JAMS Comprehensive Arbitration Rules & Procedures** (emphasis added) (available at http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule11) (last accessed April 13, 2016).  District courts in this circuit have found similar provisions invoking the rules of the American Arbitration Association evidence "clearly and unmistakably" the parties' "intent to arbitrate all matters, including the question of arbitrability." **Getzelman v. Trustwave Holdings, Inc**., 2014 WL 3809736 at *3 (D. Colo. Aug. 1, 2014) (citing cases; citation and internal quotation marks omitted).  This same result has been reached by all the federal circuit courts to have considered the issue as well.  **See, e.g.**, **Awuah v. Coverall North America, Inc**., 554 F.3d 7, 11-12 (1st Cir. 2009); **Agere Systems, Inc. v. Samsung Electric Ltd.**, 560 F.3d 337, 339-40 (5th Cir. 2009); **Fallo v. High-Tech Institute**, 559 F.3d 874, 877-78 (8th Cir. 2009); **Qualcomm Inc. v. Nokia Corp**., 466 F.3d 1366, 1372-73 (Fed. Cir. 2006); **Terminix International Co., LP v. Palmer Ranch Ltd.**, 432 F.3d 1327, 1332-33 (11th Cir. 2005); **Contec Corp. v. Remote Solution Co.**, 398 F.3d 205, 208 (2nd Cir. 2005). Accordingly, matters going to the scope of the arbitration clause are not for this court, but for the arbitrator.[8]

---

[8] Even if it were proper to consider whether plaintiff's claims are within the scope of the arbitration agreement, given the substantial breadth of the arbitration clause here, I would be inclined to resolve any doubt as to the scope of the agreement in favor of arbitration.  **See Sanchez v. Nitro-Lift Techs., L.L.C**., 762 F.3d 1139, 1147 (10th Cir. 2014) (arbitration clauses applying to disputes "arising under" or "in connection with" agreement constitute broad arbitration clauses, and citing cases that so find despite existence of other, potentially limiting, language).

For these reasons, plaintiff's claims are referable to arbitration. Defendant requests an outright dismissal, rather than a stay. Despite the seemingly mandatory language of section 3 of the FAA in this regard,[9] the majority of federal courts hold that a case may be dismissed, rather than stayed, when all claims therein are arbitrable. *See, e.g.*, *Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999); *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 151, 156 & n.21 (1st Cir. 1998); *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Black and Veatch International Co. v. Wartsila NSD North America, Inc.*, 1998 WL 953966 at *4 (D. Kan. Dec. 17, 1998). *But see Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269-71 (3rd Cir. 2004).

Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss when all claims are arbitrable and the movant specifically requests dismissal rather than a stay. *See Armijo v. Prudential Insurance Co. v. America*, 72 F.3d 793, 796-97 (10th Cir. 1995) (finding appellate jurisdiction over order dismissing case in which all claims referred to arbitration; distinguishing *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 954–55 (10th Cir. 1994), because defendant had not requested dismissal). Those two prerequisites are satisfied here. I therefore find it proper to dismiss plaintiff's claims and this action.

---

[9] Section 3 provides, in pertinent part,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending . . . shall on application of one of the parties stay the trial of the action . . .

9 U.S.C. § 3.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant TAMKO Building Products, Inc.'s Motion To Dismiss or Compel Arbitration** [#16], filed October 30, 2015, is granted;

2. That, with the consent of the magistrate judge, the **Order of Reference** [#30], filed January 27, 2016, is withdrawn, and **Defendant TAMKO Building Products, Inc.'s Motion for Stay Pending Ruling on Its Motion To Dismiss or Compel Arbitration** [#29], filed January 27, 2016, is denied as moot;

3. That the parties shall proceed to arbitrate plaintiff's claims against defendant as provided by the arbitration clause of the Limited Warranty;

4. That all pending pretrial deadlines are vacated;

5. That the combined Final Pretrial Conference/Trial Preparation Conference scheduled for February 3, 2017 at 11:00 a.m., and the trial scheduled to commence on February 27, 2017, are vacated;

6. That all claims for relief and causes of action brought by plaintiff against defendant in this lawsuit are dismissed; and

7. That this case is closed.

Dated April 13, 2016, at Denver, Colorado.

> **BY THE COURT:**
>
> Robert E. Blackburn
> United States District Judge